526 So.2d 188 (1988)
The STATE of Florida, Appellant,
v.
Earnest JAMES, Appellee.
No. 87-1388.
District Court of Appeal of Florida, Third District.
June 7, 1988.
*189 Robert A. Butterworth, Atty. Gen., and Richard L. Kaplan, Asst. Atty. Gen., for appellant.
Bennett H. Brummer, Public Defender, and Bruce A. Rosenthal and Elliot H. Scherker, Asst. Public Defenders, for appellee.
Before SCHWARTZ, C.J., and BARKDULL and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
The State appeals an order granting the defendant's motion to suppress cocaine found in a paper bag behind the gas tank flap of the defendant's car immediately before his arrest and a firearm and money taken from the defendant's person immediately following his arrest. Finding both searches to be lawful as incident to a valid arrest,[1] we reverse.
The search of the paper bag came about in the following manner. Pablo Camacho, a City of Miami police officer and veteran of twelve years on the force and more than five hundred narcotics investigations, was assigned to work undercover as part of the Street Narcotics Unit. The primary responsibility of members of this Unit was to respond to citizens' complaints about street-corner sales of narcotics. According to Camacho, he and his fellow officers carried out this responsibility by cruising suspect areas in plainclothes and unmarked rented vehicles so as to enable them to purchase narcotics from unsuspecting sellers.
While driving in a predominantly black residential area well known to the police for its sales of rock cocaine, Camacho  a Latin  passed slowly by the defendant, whom he had never seen before. As Camacho's car approached, the defendant, who was seated on the trunk of his blue Thunderbird and holding a brown paper bag in one hand, waved his empty hand. Camacho testified that, based on his experience as a narcotics investigator, the wave was a signal to him that the defendant had narcotics *190 to sell.[2] Camacho stopped next to the Thunderbird and started to get out. As Camacho was halfway out of his car, "somebody yelled out `ninety-nine.'" Knowing that to be a street word for police, Camacho concluded that someone had recognized him. As the words "ninety-nine" rang out, Camacho saw the defendant reach towards the side of the Thunderbird, open the gas flap, insert the paper bag behind the flap, close the flap, and start walking away from the two cars. Camacho went directly to the defendant's vehicle, removed the paper bag from behind the gas flap, opened it, found two large chunks of crack cocaine and arrested the defendant.
We conclude that under the totality of the circumstances  that is, a location noted for street sales of narcotics, a signal connoting to an experienced narcotics officer that the defendant had narcotics for sale, and the defendant's secreting of the bag upon being alerted that Camacho was a policeman  Camacho had probable cause to believe that the paper bag contained narcotics and therefore that the defendant was guilty of the crime of possessing narcotics. While the defendant correctly points out that the fact that a person engages in suspicious behavior in a high crime area does not establish probable cause, see, e.g., State v. Hoover, 520 So.2d 696 (Fla. 4th DCA 1988); Walker v. State, 514 So.2d 1149 (Fla. 2d DCA 1987); Cobb v. State, 511 So.2d 698 (Fla. 3d DCA 1987), the distinguishing feature of the present case is the signal to the officer. This wave of the hand to a stranger in the neighborhood  conveying to the experienced officer that the person has narcotics for sale  is, in our view, as persuasive evidence of the presence of narcotics as is a narcotics officer's observation of a package which in his experience is commonly used to carry narcotics. P.L.R. v. State, 455 So.2d 363 (Fla. 1984) (manila envelope); Manee v. State, 457 So.2d 530 (Fla. 2d DCA 1984) (tightly-rolled brown paper bag). See also State v. Cross, 13 F.L.W. 270 (Fla. 3d DCA Jan. 26, 1988) (Jorgenson, J., dissenting) (tape-wrapped baseball-shaped object).
However, relying upon United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); State v. Williams, 462 So.2d 69 (Fla. 1st DCA 1985); Manee v. State, 457 So.2d 530 (Fla. 2d DCA 1984); and Mancini v. State, 448 So.2d 573 (Fla. 1st DCA 1984), the trial court concluded that although the police may have had probable cause to believe that the paper bag within the vehicle held contraband, the officers were authorized only to seize and detain the bag pending the obtaining of a search warrant. While the cases relied upon by the trial court indeed support the proposition that the police may not conduct a warrantless search of a specific container within a vehicle when they have probable cause to believe that the container  as distinguished from the vehicle  holds contraband, see generally 3 W. LaFave, Search & Seizure § 7.2(d) (2d ed. 1987), they are inapposite to this case where the search of the paper bag was incident to a lawful arrest.
As we have already noted, Officer Camacho had probable cause to believe that the paper bag in the hand of the defendant contained narcotics; he thus had probable cause not only to search the bag but to arrest the defendant. That Camacho fortuitously went for the bag before he went for the defendant is, as our courts have repeatedly held, without legal consequence: the validity of a search of a defendant conducted after probable cause to arrest him has arisen is unaffected by the fact that the search comes before the arrest. E.g., Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *191 McNeil v. State, 512 So.2d 1062 (Fla. 4th DCA 1987), review denied, 519 So.2d 987 (Fla. 1988); State v. Pringle, 499 So.2d 75 (Fla. 2d DCA 1986); Acosta v. State, 431 So.2d 715 (Fla. 3d DCA 1983); State v. Emery, 411 So.2d 341 (Fla. 4th DCA 1982); State v. King, 405 So.2d 770 (Fla. 5th DCA 1981); Thomas v. State, 395 So.2d 280 (Fla. 3d DCA 1981); Dixon v. State, 343 So.2d 1345, 1347 n. 3 (Fla. 2d DCA 1977). Likewise, the validity of the search as one incident to a lawful arrest is again, quite sensibly, unaffected by the fact that moments before his arrest, the defendant removed the bag from his person and placed it behind the gas flap of his automobile. See United States v. James, 555 F.2d 992 (D.C. Cir.1977) (where probable cause to believe that defendant's jacket contained narcotics, defendant's removal of jacket and handing of it to another person as police approached does not prevent immediate warrantless search of jacket); State v. Cole, 674 P.2d 119 (Utah 1983) (police permitted to retrieve and search knapsack that defendant handed to friend immediately before defendant's arrest). See also Jenkins v. State, 426 So.2d 1305 (Fla. 2d DCA 1983); State v. Quinn, 565 S.W.2d 665 (Mo. App. 1978). "[I]f the police are already possessed of probable cause that a particular object in view is a fruit, instrumentality, or evidence, then it is unobjectionable that they proceed to inspect it carefully in order to confirm this probability." 2 W. LaFave, Search & Seizure § 6.7(b), at 717 n. 29 (2d ed. 1987). Accordingly, the search being lawful, the order suppressing the evidence is reversed and the cause remanded to the trial court for further proceedings.
Reversed and remanded.
NOTES
[1] In this case, we assume without deciding that the defendant had a reasonable expectation of privacy in the area under the gas flap of his automobile. Compare Rakas v. Illinois, 439 U.S. 128, 152, 99 S.Ct. 421, 435, 58 L.Ed.2d 387, 407 (1978) (Powell, J., concurring) (precautions to preserve privacy indicate reasonable expectation of privacy) and United States v. Perez, 644 F.2d 1299 (1981), appeal after remand, 689 F.2d 1336 (9th Cir.1982) (extraction of contraband secreted inside gas tank illegal search because of reasonable expectation of privacy) with Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (lesser expectation of privacy in car because it has little capacity for escaping public scrutiny) and United States v. Foskey, 636 F.2d 517, 204 U.S.App.D.C. 245 (1980) (no reasonable expectation of privacy in paper bag found secreted behind gas flap during lawful search of car). We do, however, reject as utterly without merit the State's argument, made for the first time on appeal, that the defendant abandoned the paper bag by placing it in and walking away from his own automobile. No objective facts support an abandonment argument. O'Shaughnessy v. State, 420 So.2d 377 (Fla. 3d DCA 1982). Moreover, because we need not, we will not explore whether New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), and Savoie v. State, 422 So.2d 308 (Fla. 1982), which both involved the stop of a vehicle, can be extended to permit the search of a container found in a vehicle where there has been no stop.
[2] According to Camacho's unchallenged testimony:

"Q. In your previous experience as an investigator of narcotics, did you think that was unusual, that waving signal, that the defendant was making to you?
"A. No. That is the signal I have been signalled numerous times and they all end up in narcotics transactions.
"Q. What does that signal mean to you?
"A. Come over, I've got it. That is usually what it means."